# Exhibit C



DAVID NELSON
Tel.: (954) 377-4233
E-mail: dnelson@bsfllp.com

August 3, 2017

**VIA EMAIL AND FEDEX**

Scott A. Lowry
U.S. SECURITIES AND EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, FL  33131

      Re:    **Woodbridge Mortgage Investment Fund III, LLC (FL-04024)**

Dear Mr. Lowry:

      I write on behalf of our client, Woodbridge Group of Companies, LLC ("Woodbridge"), in response to your letter of August 1, 2017.

      As you are well aware, Woodbridge has produced in response to the staff's overbroad January 31 subpoena nearly one million pages of documents, stretching over more than five years, representing close to virtually of the corporate records in its possession.  All this has been accomplished while attending to and responding to the 57 other subpoenas you have issued to Woodbridge and associated parties for documents and testimony above and beyond the Woodbridge subpoena.  And to this day Woodbridge continues to produce non-privileged documents responsive to those subpoenas, including those documents and recordings identified in your August 1 letter.  But rather than once again reiterate our responsiveness to your investigatory demands, I wish to address several distinct issues.

      Your August 1 letter attempts to turn incomplete document review on your part into yet another misplaced and baseless accusation of some failing on our part.  You claim that "[r]ecently, the staff became aware of Woodbridge's filings" in the *Pina* case in the Southern District of Florida and seem to suggest that somehow we are responsible for this belated discovery ("at no point has Woodbridge indicated to the staff that these records exist").  Your characterization is false and misleading.  In the course of this exceedingly burdensome discovery process there are literally hundreds of thousands of records that we have not discussed either prior to or after production, so there is simply nothing remarkable about the fact that we have not had a discussion about (or otherwise indicated the existence of) these particular records.  More to the point, and belying the suggestion that there was anything untoward on our part, you have known about the *Pina* case since at least April of this year.  In fact, during the testimony of ███████████████ *nearly four months ago* your colleague expressly cited ███████ declaration in a question posed to her during testimony:

          Q: And what was the purpose of your declaration in this matter?
          Let me just read the caption. It's "Woodbridge Structured Funding,

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



Scott A. Lowry
August 3, 2017
Page 2

> LLC., a Delaware Limited Liability Company and Woodbridge Group of Companies, LLC., a Delaware Limited Liability Company, Plaintiff versus Andres Pina and Others." And this was filed on March 21st, 2017.

Tr. of ███████ Testimony, at 124:13 - :20 (April 5, 2017). This episode conforms to the pattern that has emerged where, rather than actually review the information Woodbridge has provided, staff would prefer to serve additional subpoenas and levy accusations of noncompliance. I would hope that staff would more thoroughly review the information in its possession before wasting the Court's time, as you threaten to do, with additional unsupported accusations. We have never said we would not produce these records and any suggestion on your part that this is this case is false.

Additionally, I would like to remind you that in cooperating with the SEC's non-public investigation, Woodbridge has repeatedly requested that the documents and correspondence it submits be treated as confidential material. However, staff disregarded this request in filing its subpoena enforcement application in *SEC v. Woodbridge Group of Companies, LLC*, (17-MC-22665-CIV-ALTONAGA/Goodman). Specifically, staff included with Scott Lowry's declaration correspondence for which Woodbridge had requested confidential treatment ("Attachment G"). Woodbridge requests that you remedy this disclosure and that any future filings that include Woodbridge's confidential information be made under seal.

Finally, Woodbridge would like to address the gross inconsistencies in the staff's recent court filing with respect to email discovery. *See* "Securities and Exchange Commission's Application for an Order Enforcing An Administrative Subpoena," (July 17, 2017) (the "Application"). The Application suggests that the staff has attempted to reduce the burden on Woodbridge by identifying categories of "priority production" in a May 18 letter, stating: "The second category of Prioritized Production identified the e-mails of three key employees, specifically, immediate production of company e-mails sent to, sent from, or received by: (1) ████████████████████████████████████ company e-mail addresses; (2) Mr. ███████ personal e-mail address; (3) D.R., Woodbridge's Managing Director of Investments; and (4) N.P., Woodbridge's Controller." Appl. at ¶ 16 (citing Decl. of S. Lowry ¶ 17).

A cursory comparison of the May 18 "priority production" nicely capsulizes the root of our unfortunate disagreement over email production. The original January 31 subpoena (described in Decl. of S. Lowry ¶ 11) calls for documents limited to Woodbridge's offerings, and within that subset, calls for only emails "between Woodbridge and Investors," "between sales agents (or other Persons soliciting Investors) and Investors," and "between Woodbridge and sales agents." Subpoena ¶¶ 1(k), (*l*), (m). As written, of course, the universe of emails subject to the subpoena is unmanageably voluminous. The "priority production" referenced in the SEC's court papers, however, unhelpfully calls for *all* emails in which certain custodians were participants, without any limit as to the subject matter of the communication or the communicant. In other words, the staff's "priority production" not only does not relieve the



Scott A. Lowry
August 3, 2017
Page 3

burden on Woodbridge but unlawfully exceeds the scope of the subpoena. Clearly, the "prioritization" made an overly broad subpoena even more overly broad, and the suggestion that Woodbridge was or is contumacious in not complying is inappropriate and misleading.

Nonetheless, Woodbridge remains open to working with the staff to narrow the scope of the "priority" request in an effort to produce relevant emails. One possible approach, as discussed, is the creation of a list of mutually acceptable search terms, which are then run through the database to find responsive emails. Woodbridge proposed such an approach to the SEC on March 17, 2017 in connection with other custodians. Hearing nothing *for over a month,* on April 21, 2017, Woodbridge took the initiative and proposed a list of 23 search terms. *Nearly a month later*, the staff finally responded by letter dated May 18, 2017. Rather than discuss which of the 23 proposed terms would be most useful, the SEC instructed Woodbridge to run *all* of the 23 proposed terms *and* directed that Woodbridge run an additional 34 search terms of such generality that they would be all-but-useless in narrowing the scope of production. Four of the SEC's 34 proposed terms duplicated Woodbridge's proposed terms, which in itself is an indictment of just how carefully the staff considered Woodbridge's proposed terms before directing Woodbridge to run all of them. The end result was an unwieldly list of fifty-three search terms for each custodian.

It bears emphasis that at no time during these efforts to narrow the scope of email production did Woodbridge agree to produce all of the emails of all or any of the referenced custodians *without regard to subject matter or communicant*—a request that is clearly beyond the scope of the subpoena. By the same token, Woodbridge never made a blanket refusal to produce emails. In fact, it continues to work diligently to find a solution to the problem and tailor the production to email communications that are actually relevant to the investigation. The staff on the other hand, after several month-long delays of its own doing, complains about a one week response delay by Woodbridge (when no time certain had been set for a call) as one of its supposed justifications for filing a motion to compel. *See* Appl. at ¶¶ 23-24.

Meanwhile, Woodbridge continues to comply with the January 31 subpoena and all other aspects of the investigation. Eleven witnesses are scheduled for testimony in July and August, all of those sessions facilitated by Woodbridge. Another production of documents is slated for production on August 4 or shortly thereafter as part of Woodbridge's continued rolling production of records responsive to the subpoena. Woodbridge's production, as mentioned at the outset, now totals nearly one-million pages of corporate documents.

It is unclear to us whether the staff is interested in pursuing a discussion of a workable solution to the email production (which numbers in the hundreds of thousands), or if it has simply decided to put the matter in the hands of the court. We remain willing to work with the staff and produce a meaningful list of search terms that will produce emails that are responsive to the subpoena. However, insisting on nearly sixty search terms that have no hope of reducing the production burden speaks volumes about the staff's lack of investigatory focus after nearly 10



Scott A. Lowry
August 3, 2017
Page 4

months and, unfortunately, demonstrates little commitment to carrying out an efficient and fair "fact-finding" investigation. We hope that is not your posture.

Woodbridge requests confidential treatment of this letter and the referenced documents (the "Confidential Material") under the Freedom of Information Act ("FOIA") for reasons of personal privacy and business confidentiality.

The Confidential Material is exempt from mandatory disclosure under various provisions of FOIA, including 5 U.S.C. § 552(b)(4) (which protects confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes), and 5 U.S.C. § 552(b)(6) (which protects files that, if disclosed, would constitute an unwarranted invasion of personal privacy). Moreover, disclosure of these Confidential Materials may be prohibited under 18 U.S.C. § 1905, and further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a. Finally, the Confidential Material is protected from disclosure because our client would not customarily release it to the public.

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the Commission with our client's request, through the undersigned, that it be kept in a nonpublic file and that only Commission staff have access to it. Our client requests that the Commission notify the undersigned by telephone (954-377-4233) immediately after receiving any FOIA request for this letter or its enclosure, or any court order, subpoena, or summons seeking the same. Our client requests that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that our client has the opportunity to object to such disclosure and pursue any available remedies.

Should the Commission be inclined to grant any FOIA request for the Confidential Material, our client expects that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed. In that case, our client will further substantiate its request for confidential treatment, and will request a hearing on the claim of exemption. Our client further requests that the Commission destroy all materials submitted to it when this matter is concluded.

Finally, if the Commission or its staff determines to transfer any of the Confidential Material to another federal agency, please forward a copy of this letter to that agency along with the Confidential Material, and indicate that our client has requested confidential treatment of the material.

Sincerely,

David Nelson

DN/jm

BSF

Scott A. Lowry
August 3, 2017
Page 5

cc:   Freedom of Information Act Officer (*via FedEx*)
      Office of FOIA Services
      U.S. Securities and Exchange Commission