# Exhibit D



DAVID NELSON
Tel.: (954) 377-4233
E-mail: dnelson@bsfllp.com

August 16, 2017

**VIA EMAIL AND FEDEX**

Scott A. Lowry
U.S. SECURITIES AND EXCHANGE COMMISSION
Miami Regional Office
801 Brickell Avenue, Suite 1800
Miami, FL  33131

      **Re: Woodbridge Mortgage Investment Fund III, LLC (FL-04024)**

Dear Mr. Lowry·

      I write on behalf of our client, Woodbridge Group of Companies, LLC ("Woodbridge") in connection with our ongoing discussions regarding Woodbridge's production of company emails in response to the SEC subpoena issued on January 31, 2017 (the "Subpoena").

      As stated in my letter dated August 3, 2017, as reiterated in our "meet and confer" discussions with SEC litigation counsel on August 10, and as repeated on numerous occasions in our correspondence and phone calls throughout the investigation, Woodbridge is committed to reaching a reasonable solution to email discovery. Let us be clear:  Woodbridge has never refused to produce emails.

      Based on recent experience (for example, the lack of response to our August 3 letter), however, it appears that the staff is more interested in portraying Woodbridge as noncompliant than in negotiating a meaningful narrowing to its overbroad demand for information.  Despite the staff's insistence that they have done this by "prioritizing" production, from our vantage point the staff has identified so many priorities that this has provided no solution at all.  The staff's proposal to reduce our review burden with respect to the 29,000 emails presently in question in the test database of a single employee consisted of fifty-three search terms that had negligible impact on the number to be reviewed.  Indeed, the proposed search terms included the individual's first and last name which—not surprisingly—appears in virtually every email to or from that individual without regard to subject matter.

      The staff's unreasonable position is unfortunate.  In response to the other 27 subparts of the Subpoena, Woodbridge has demonstrated its good faith by producing documents totaling

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



Scott A. Lowry
August 16, 2017
Page 2

over a million pages. Requiring compliance with the Subpoena as written with respect to emails will further increase the undue burden that has been imposed on Woodbridge. Rather than come around to a reasonable position, the staff has apparently doubled down. The Subpoena is already overly broad as written, and yet the staff apparently now is insisting on the production of emails that are even beyond the scope of the Subpoena, having now represented in court filings that they are demanding all emails to and from certain custodians *without regard to subject matter*. *See* SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER ENFORCING AN ADMINISTRATIVE SUBPOENA," at 18 (July 17, 2017) ("SEC Enforcement Application"). Thus, while we continue to urge you to work with us to narrow the Subpoena in a manner that is workable, manageable, and will not deplete our resources, we cannot and will not waive our right to defend the Company against the staff's untenable position in the pending proceeding.

While Woodbridge is confident that a court would agree with its position (should it come to that), we remain hopeful and would prefer that the issues be resolved without the court's involvement. We hope that you agree. To that end, Woodbridge provides the following update with respect to the application of 53 search terms Woodbridge emails from custodian ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

By letter dated April 21 we proposed the following 23 search terms:

| | | |
|---|---|---|
| account | fund | PPM |
| accredited | income | quarterly |
| asset | investment | rate |
| balance | ledger | return |
| bonus | liability | revenue |
| budget | minutes | ▮▮▮▮▮▮▮ |
| commission | offering | subscription |
| default | private placement | |

The twenty-three terms were intended to be a starting point, with the expectation that negotiations with staff would reduce the list of 23 to a manageable number. Instead, by letter dated May 18, 2017 (Scott Lowry), the staff directed Woodbridge to run *all 23* proposed terms, as well as *an additional 34 search terms*, four of which duplicated terms proposed in BSF's April 21 letter. Duplicate terms are struck-through below, leaving a total of 53 terms:



Scott A. Lowry
August 16, 2017
Page 3

| | | |
|---|---|---|
| ~~Private placement~~ | Structured |  |
| ~~PPM~~ | Settlement | Mortgage |
| Investor | Presentation | Commission |
| ~~Offering~~ | Sales agent | Fee |
| Lender | Financial planner | Override |
| Loan | Advisor | |
| "first position commercial mortgage" | Paid | |
| FPCM | Pay | |
| Bridge | Payment | |
| Construction | Interest | |
| Lottery | Principal | |
| | Refund | |

    We dispute the staff's characterization of the SEC's 53 search terms as a "prioritization," particularly to the extent that word is intended to suggest that the staff has somehow eased Woodbridge's ability to identify and turn over relevant emails. To the contrary, your proposed terms have not reduced the burden at all. Moreover, while it took the staff nearly a month simply to respond to the terms we proposed in April, the staff repeatedly impugns Woodbridge in its public court filings, falsely accusing Woodridge of "refusing" to comply with the subpoena based on a one week delay in getting back to you. *See* SEC Enforcement Application at 2, 7, 11. Although the staff's purported "prioritization" of search terms in the May 18 letter effectively put email production on hold because we have received no meaningful guidance from you on how to proceed, Woodbridge and its counsel have diligently complied with all of the SEC's other subpoenas and requests. Since May 18 alone, the Company has:

- Produced tens of thousands more documents in response to the SEC subpoena, including records from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ bringing Woodbridge's total production to over a million pages;
- Facilitated and provided the testimony of eight current employees of Woodbridge and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in June;
- Facilitated and planned for the testimony of seven additional current employees of Woodbridge in California and Woodbridge Realty of Colorado in August;
- Facilitated and provided the testimony of outside legal counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;
- Facilitated and planned for the testimony of outside legal counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;
- Facilitated and provided the testimony of four outside financial planners who sold Woodbridge products;
- Responded to fifteen document subpoenas served on current employees of Woodbridge, ▮▮▮▮▮▮▮, and Woodbridge Realty of Colorado;
- Produced documents on behalf of Woodbridge's outside legal counsel in ▮▮▮▮▮▮▮▮▮▮;
- Produced documents on behalf of outside legal counsel in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮;
- Produced documents on behalf of outside legal counsel in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Scott A. Lowry
August 16, 2017
Page 4

Woodbridge was in fact in the process of analyzing the proposed search terms when the SEC, without warning, filed its Application regarding the Subpoena in federal court. We have now completed that trial run. As the staff directed in its May 18 letter, Woodbridge ran searches for each of the fifty-three terms with participant qualifiers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The number of "hits" generated by these test searches did not reduce the database to a manageable size at all. More than half of the staff's proposed terms resulted in hits that numbered in the thousands.

Based on these results, we excluded those overly inclusive terms to produce a list of the most efficient twenty-five search terms (*i.e.*, 1,000 or fewer hits):

| | | |
|---|---|---|
| Private placement | Override | Commission |
| PPM | Budget | Fee |
| Offering | Income | Asset |
| "first position | Ledger | Balance |
| commercial | Minutes | Bonus |
| mortgage" | Quarterly | Default |
| Lottery | Revenue | Liability |
| Presentation | Subscription | |
| "sales agent" | Bridge | |
| "financial planner" | Settlement | |

Given that we are now less than a month away from the one-year anniversary of the Formal Order in this case, and given the vast amount of information that Woodbridge has already provided in response to the Subpoena, we deem it more than reasonable to ask that the staff select from this list of twenty-five a subset of those most relevant to the staff's investigation. Surely at this juncture of this exhaustive investigation the staff has a firm handle on what it is looking for. Once you have done so we will undertake a review.

Please let us know your response to this proposal, and what proposals you have to focus and reduce the burden on Woodbridge with respect to the other emails subject to the Subpoena. We look forward to your response.

The Confidential Material is exempt from mandatory disclosure under various provisions of FOIA, including 5 U.S.C. § 552(b)(4) (which protects confidential commercial or financial information obtained from a person), 5 U.S.C. § 552(b)(7) (which protects records or information compiled for law enforcement purposes), and 5 U.S.C. § 552(b)(6) (which protects files that, if disclosed, would constitute an unwarranted invasion of personal privacy). Moreover, disclosure of these Confidential Materials may be prohibited under 18 U.S.C. § 1905, and further protections may be available under the Privacy Act of 1974, 5 U.S.C. § 552a. Finally, the Confidential Material is protected from disclosure because our clients would not customarily release it to the public.



Scott A. Lowry
August 16, 2017
Page 5

In accordance with 17 C.F.R. § 200.83 and other applicable laws and regulations, the Confidential Material is submitted to the Commission with our clients' request, through the undersigned, that it be kept in a nonpublic file and that only Commission staff have access to it. Our clients request that the Commission notify the undersigned by telephone (954-377-4233) immediately after receiving any FOIA request for this letter or its enclosure, or any court order, subpoena, or summons seeking the same. Our clients request that the undersigned immediately be notified of such request, be furnished a copy of all written materials pertaining to such request (including but not limited to the request itself), and be given advance notice of any intended release so that our clients have the opportunity to object to such disclosure and pursue any available remedies.

Should the Commission be inclined to grant any FOIA request for the Confidential Material, our clients expect that the procedures set forth in 17 C.F.R. § 200.83 and Executive Order 12,600, 52 Fed. Reg. 23,781 (June 23, 1987), will be followed. In that case, our clients will further substantiate their request for confidential treatment, and will request a hearing on the claim of exemption. Our clients further request that the Commission destroy all materials submitted to it when this matter is concluded.

Finally, if the Commission or its staff determines to transfer any of the Confidential Material to another federal agency, please forward a copy of this letter to that agency along with the Confidential Material, and indicate that our clients have requested confidential treatment of the material.

Sincerely,

David Nelson

DN/jm

cc:   Christine Nestor (*via email*)
      Russell Koonin (*via email*)

      Freedom of Information Act Officer (*via FedEx*)
      Office of FOIA Services
      U.S. Securities and Exchange Commission